# CIRCUIT COURT OF THE CITY OF NORFOLK

Linda Zabala

v.

Wilfredo Zabala

March 9, 1999

Case No. (Chancery) 94-125

BY JUDGE JOSEPH A. LEAFE

This Court heard arguments on February 5, 1999, with regard to the petition filed by the Complainant, Linda Zabala, in January of 1999. Both counsel have honored this Court's request to submit memoranda arguing their respective positions.

On January 22, 1991, Complainant Linda Zabala and Respondent Wilfredo Zabala, wife and husband, entered into a separation agreement. According to the terms of that agreement, he would pay her $2120 per month in spousal support and $680 per month in child support, for a total of $2800. The agreement also stipulated that the wife would be entitled to part of her husband's retirement pay. Respondent Zabala retired from the Navy in December of 1993.

On June 1, 1994, the Commissioner in Chancery submitted his report and recommended the $2800 monthly award as contained in the separation agreement.

On September 21, 1994, the parties signed a Supplemental Property Separation Agreement. That agreement stated:

It is specifically agreed that Wife shall receive from Husband's military retirement proceeds fifty percent (50%) of his disposable retired pay … .

> Husband further agrees not to take, or attempt to take, any acts or actions which would interfere with the receipt of [sic] Wife of such direct payments of her rights in this pension payment.

In addition, the agreement specified that the husband would pay the wife $680 per month for child support and $107 per month for spousal support.

On December 30, 1994, the final divorce decree was entered incorporating both separation agreements and directing the husband to pay "fifty percent of his net disposable monthly retired pay" to wife.

On August 24, 1998, Respondent's military disability rating was raised from 10% to 100%. In order to receive the non-taxable VA payments based on this disability, Respondent waived the bulk of his retirement pay. This waiver brought about initial VA disability payments of $2,102.00 and caused a retirement pay reduction to $89.00. Complainant began to receive direct deposits of half that amount, or $44.50 in December 1998.

The petition presently before the Court was filed on January 13, 1999, by the Complainant, Linda Zabala.

Since 1991, the parties have entered into agreements and been bound by decrees which addressed spousal support and child support. Initially, the monthly payment was composed of spousal support and child support with no designation as to the source of that money. The total was $2800 of which $680 was child support and $2120 was spousal support.

When Respondent Wilfredo Zabala retired from the Navy, a supplemental agreement was reached in which the payments would consist of one-half his retirement pay, $107 in spousal support, and $680 child support. The Court notes that the amount of child support will upon its termination become additional spousal support.

Both parties recognize that this Court does not have the authority to direct Respondent Wilfredo Zabala to assign his disability payments. Defense counsel correctly cites *Mansell v. Mansell*, 490 U.S. 581, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989), for that proposition. Virginia adopted that proposition in *Lambert v. Lambert*, 10 Va. App. 623, 395 S.E.2d 207 (1990). The present case does not invoke that issue as it does not seek an assignment of disability benefits.

The issue here is the one raised in *Owen v. Owen*, 14 Va. App. 623, 419 S.E.2d 267 (1992). There the husband and wife agreed that she would receive "one-half of his Army gross retirement pay." *Id.* at 625. Judge Duff identified the issue not as a *Mansell* issue, but rather "whether parties may use a property settlement agreement to guarantee a certain level of income by providing for

alternative payments to compensate for a reduction in payment level based on a reduction in retirement benefits." *Id.* at 626. Speaking for the unanimous three-judge panel, Judge Duff went on to conclude that the incorporation of such an agreement by a state court decree does not offend the federal statute covering this topic.

The Court observed that the Property Settlement Agreement in that case "insures the wife a steady or possibly increasing monthly payment in return for her waiver of the right to receive spousal support once the husband retired." *Id.* at 627. Further, "The husband specifically promised to take no action to reduce this monthly payment." The Court specifically noted that the minimum military retirement benefits can be directly predicted by reference to 10 U.S.C. § 1408. Thus the parties would know at the time of the Agreement what those benefits would be.

As a matter of public policy, Judge Duff concluded, "If we adopted the husband's interpretation of the guarantee language, the guarantee would be rendered virtually meaningless, due to potentially large-scale conversion of retirement benefits to disability benefits." *Id.* at 629. This wording is especially appropriate to the present case.

This Court addresses first Respondent's argument that *Owen* involved a disposition of "gross retirement pay" whereas this case involves "disposable retired pay." Respondent further notes that "disposable retired pay" is a term of art which federal law defines. Under 10 U.S.C. § 1408 (a)(4):

> The term "disposable retired pay" means the total monthly retired pay to which a member is entitled less amounts which ... (B) are deducted from the retired pay of such member ... as a result of a waiver of retired pay required by law in order to receive compensation under ... title 38 [military disability].

Thus Respondent argues that by the plain text of the agreement, disability pay is excluded. This Court is of the opinion that the phrase "disposable retired pay" was most likely chosen to specifically exclude any disability income that Respondent was receiving at the time of the signing of the Supplemental Agreement based on the then existing 10% rating. In any event, this Court finds that "disposable retired pay" as used in the Supplemental Agreement was the amount then being received.

Respondent further argues that the guarantee clause was upheld because of consideration provided by the wife's waiver of spousal support. In addition, Respondent argues that the facts in this case are different because the wife

does receive spousal support and child support. The facts in this case are different but the principle is the same. While the Supplemental Agreement did provide spousal support to Ms. Zabala in the amount of $107 per month, this minimal payment was for the obvious purpose of supplementing the retirement benefit to reach an agreed level of spousal support. This Court is more than satisfied that the guarantee clause in the Zabala agreement is met by the consideration of Ms. Zabala's acceptance of a reduction in spousal support from $2120 to $107 and waiving further claims to retirement benefits.

This Court therefore concludes that *Owen* directly controls the facts of this case. The parties here clearly intended to provide a stable level of support for Ms. Zabala in both the original Agreement and the Supplemental Agreement. The Court interprets that intent to require Mr. Zabala to provide that payment, regardless of the source. "[T]he husband is free to satisfy his obligations to his former wife by using other available assets." *Holmes v. Holmes*, 7 Va. App. 472, 485, 375 S.E.2d 387, 394-5 (1988).

The Complainant requests five forms of relief from this Court: a finding of contempt, a declaration of arrearage, a declaration of interest at 9% on those arrearages, an order for monthly allotment from Respondent's pay, and attorney's fees.

This Court does conclude that Respondent is in arrears in his payments. This Court further concludes that Respondent is in arrears for the months of December 1998 and January and February 1999. Specifically, except for the $44.50 which has been paid each month, the Respondent is in arrears for half the amount of his retirement pay. The Court will order payment of arrears of $3192. This amount is based upon one half of $2217 for three months less a credit of $44.50 per month. Pursuant to statute, this Court will order interest to be paid on the arrearage from December 1, 1998, at 9% until paid.

This Court does not find, as required under Va. Code § 20-115, that Respondent "willfully fail[ed] or refuse[ed] to comply with any order entered pursuant to ... Va. Code § 20-107.3." Therefore, this Court does not hold Respondent in contempt.

This Court will not order a payroll allotment at this time, nor will it award attorney's fees to the Complainant.